CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 07 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JERRY A. HURST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:05-CV-776 |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) By: | Michael F. Urbanski |
| COMPANY, | ) | United States Magistrate Judge |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiff's motion for partial summary judgment and defendant's motion for summary judgment. Plaintiff, Jerry Hurst ("Hurst"), contends that defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), breached his automobile insurance policy by denying his claim concerning the theft of his van. State Farm asserts that Hurst's claim is barred by his lack of cooperation in its investigation of his theft claim.

No reasonable juror could conclude that Hurst met his obligation under the policy of insurance to cooperate with State Farm in its investigation of this claim. As a result, the undersigned recommends that plaintiff's motion for partial summary judgment be **DENIED**, and defendant's motion for summary judgment be **GRANTED**.

I.

There are no genuine issues of material fact in dispute in this case. Hurst filed a claim under his automobile insurance policy with State Farm asserting that his Dodge van had been stolen on April 3, 2001 from a Food Lion parking lot near the Maryland/Delaware border. Hurst's insurance policy included standard provisions that the "insured shall cooperate with the company"

and, in the event of loss, the policy instructed the insured to provide State Farm with "such information as the company may reasonably require" and upon State Farm's request to "submit to examination under oath." Hurst/State Farm Insurance Policy at 15-16, Condition 5 at 1, 8(b) at 10-14 (attached as Exhibit 1 to State Farm's Motion for Summary Judgment, Dkt. #70). The policy also provides that "[n]o action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy." Id. at Condition 6, at 1-4. Certain issues arose concerning the alleged theft. After some telephone communications with Hurst, State Farm determined to investigate Hurst's claim and retained John McGavin ("McGavin"), a Fairfax, Virginia lawyer, to conduct an examination under oath ("EUO") of Hurst.

On June 28, 2001, McGavin sent a letter to Hurst scheduling an appointment for the EUO on July 10, 2001 at 2:00 p.m. at McGavin's law offices in Fairfax, Virginia. McGavin Letter of June 28, 2001 at 1 (Ex. 3, Dkt. #70). McGavin also requested that Hurst produce the following documents: his state and federal income tax returns for the year 2000; bank account information for January, 2001 through May, 2001; any documents concerning other insurance claims he had filed in the past three years; any records of bankruptcy filings he had made in the past three years; and any documents or records which would show where he was on April 3, 2001. Id. at 2.

Hurst responded to McGavin's request in a letter dated July 5, 2001 bearing the heading "UNFAIR CLAIM SETTLEMENT PRACTICES." Hurst Letter of July 5, 2001 at 1 (Ex. 4, Dkt. #70). In this rambling, six-page handwritten letter, Hurst asserts that State Farm's actions regarding his claim were in bad faith, "arbitrary and unreasonable," "inappropriate," and "demonstrat[ed] the stalling and obvious obstruction of proper settlement procedures required by

2

statutory and case law." Id. at 1, 3. Hurst advised that the Virginia Bureau of Insurance had

invited him to file a written complaint which he was "certainly going to do in short order." Id.

at 3. Hurst then requested that McGavin provide him with certain documents "[i]n connection

with this complaint, and in view of your duties under § 38.2-510." Id. Hurst requested that

McGavin provide:

> (1)  Copy of the insurance policy, with all amendments,
>       specifying the particular language that authorizes each of the
>       requested documents in your letter of 28 June 01; and
>
> (2)  Specific legal authorities establishing the materiality, as
>       required by law, of each requested document.

Id. at 4. Hurst also requested documents "reflecting a general business practice of State Farm of

bad faith settlement and/or violations of subsection § 38.2-510A(6)." Id. at 5.

Hurst then wrote:

> Finally, as you are aware, the loss did not occur in Fairfax County
> but was incurred by me. I live in Arlington County and workdays
> are obviously not convenient for me. Consequently, neither the
> time nor place set forth in your letter is convenient or appropriate.
>
> I will be delighted to participate in the examination under oath at
> the soonest convenient date on a Saturday in Arlington in view of
> your responsibilities to provide the information above and cooperate
> with me and the Virginia Bureau of Insurance during the complaint
> process.

Id.

On July 10, 2001, McGavin replied to Hurst's letter. McGavin Letter of July 10, 2001

(Ex. 5, Dkt. #70). Regarding Hurst's claim for documents, McGavin concluded "[c]onsequently I

will follow up shortly with a copy of the policy and outline the case authority which supports our

3

position that we are entitled to the documents and things outlined." Id. at 2. Concerning the time and place for the EUO, McGavin responded:

> In regard to the location for the examination under oath, we believe that Fairfax is certainly a reasonable location for the taking of the examination under oath and we will need you to come here to our offices.
>
> In regard to a time or a date, we are unable to accommodate your request to conduct the examination under oath on a Saturday. The examination will have to be during regular business hours from 9:00 a.m. to 5:00 p.m., Monday through Friday. Please get back to me with the date and time that is convenient to your schedule so that we can conduct the examination under oath.
>
> I look forward to hearing from you with such an available date.

Id.

Hurst did not reply to McGavin's July 10, 2001 letter.

On July 30, 2001, McGavin sent an insurance policy marked "SPECIMEN" to Hurst and noted, without citing any specific cases, that extensive case law existed justifying the request for documents concerning Hurst's financial affairs and other relevant matters. McGavin Letter of July 30, 2001 at 1 (Ex. 6, Dkt. #70). McGavin again requested that Hurst provide an acceptable date when he could appear for his EUO. Id. at 2.

Hurst did not reply to McGavin's July 30, 2001 letter.

On August 20, 2001, McGavin sent yet another letter to Hurst stating that he had not received any response from Hurst as to acceptable dates to conduct the EUO. McGavin Letter of August 20, 2001 at 1 (Ex. 7, Dkt. #70). This letter also informed Hurst that State Farm would assume Hurst's silence meant that he no longer intended to pursue his claim. Id.

4

Again, Hurst made no reply to this letter. Indeed, there is no dispute that Hurst did not

respond to any of McGavin's letters of July 10, July 30 and August 30, 2001.

On November 12, 2001, having still not heard back from Hurst, State Farm sent Hurst a

letter, quoting the applicable sections of Hurst's policy and denying his claim for failure to assist

and cooperate in the investigation.[1] State Farm Letter of November 12, 2001 at 1 (Ex. 9, Dkt.

#70).

Hurst asserts that in response to this claim denial letter, he spoke with an Arlington,

Virginia State Farm agent named Jones on November 14, 2001. Hurst claims that Jones told him

that the EUO should have taken place in Arlington and that he would do his homework and get

back to him. Hurst asserts that Jones never did so, alleging that this was a calculated delaying

tactic. State Farm neither admits nor denies that this call took place as Hurst asserts.[2]

Nothing else happened on this claim for nearly four years. On October 25, 2005, Hurst

wrote Marty Harbin of State Farm requesting that State Farm send him reasons for

---

[1] Hurst asserts that this denial letter, in addition to McGavin's three letters of July 10, July 30, and August 20, 2001 are legally insufficient because these letters referred to a 1991 Dodge B350 Van when, in fact, the insured vehicle was a 1994 Dodge B350 Van. State Farm acknowledges this error. There is no merit to Hurst's hypertechnical argument. The fact that the Dodge van was identified as a 1991, as opposed to a 1994, reflects a clerical error and does not affect the rights of the parties. Hurst never responded to these three letters at all, much less point out the error. This dispute concerns a 1990s vintage Dodge van, and it is immaterial that State Farm's letters referred to it as a 1991 instead of a 1994. Hurst did not bother to correct State Farm's clerical error, and suffered no prejudice thereby.

[2] Even construing Hurst's allegation regarding the November 14 phone call in the light most favorable to him, that does not change the analysis regarding his historic failure to cooperate. This phone call occurred two days after State Farm's denial letter of November 12, 2001. Hurst's lack of cooperation which formed the basis for the denial had already occurred. State Farm's denial of Hurst's claim is unaffected by any action which happened after the denial letter was sent.

5

misrepresenting in the November 12, 2001 letter that the statute of limitations to file suit for any claim based on the policy was two years when, in fact, it was five years, and any related policy provisions. Hurst Letter of October 25, 2005 at 1 (Ex. 10, Dkt. #70).[3] On November 2, 2005, State Farm responded, acknowledging receipt of Hurst's letter, restating the grounds for denial, providing pertinent policy provisions for the denial, and correcting that the statute of limitations was five years as Hurst stated. State Farm Letter of November 2, 2005 at 1-2, (Ex. 12, Dkt. #70).[4]

Hurst filed this action on November 7, 2005 in the United States District Court for the Eastern District of Virginia. The matter was transferred to the Western District of Virginia on December 21, 2005. Counts II, III, IV, VI, and VIII were dismissed on March 23, 2007 based on the statute of limitations. Counts I and V alleging breach of contract remain from plaintiff's original complaint. Count I alleges that defendant breached the insurance contract in its November 12, 2001 letter denying plaintiff's claim under the insurance policy. Count V alleges defendant breached the insurance contract in its November 2, 2005 letter restating the reasons for denial of plaintiff's claim.

---

[3] At oral argument, Hurst sought to excuse this four year time gap by asserting that he was out of the country much of the time and had filed bankruptcy. While that may be true, Hurst attaches several documents to his Partial Summary Judgment Motion dating from April, 2002 consisting of communications with various law enforcement officials regarding the theft of his vehicle. While Hurst authored these letters to others in April, 2002, he sent no letters to State Farm in the more than four years between July 5, 2001 and October 25, 2005.

[4] At oral argument, Hurst asserted that he had a phone call with State Farm in the late 2005 time frame in which he agreed to appear at an EUO. Regardless of Hurst's alleged professed willingness, no EUO of Hurst was ever taken. After suit was filed, McGavin again offered to conduct the EUO, which Hurst declined, citing of the pendency of the lawsuit.

## II.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Varghese v. Honeywell Int'l, Inc., 424 F.3d 411, 418 (4th Cir. 2005). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) ("court need not accept plaintiff's unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual allegations" (internal quotations and citations omitted)); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Judgment as a matter of law is proper only if there can be but one reasonable conclusion as to the verdict." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)) (internal quotations omitted).

## III.

Plaintiff filed his claim in federal court based on diversity jurisdiction. Accordingly, the court will apply the law and the choice of law rules of the forum state. See Motor Club of Am. Ins. Co. v. Hanifi, 145 F.3d 170, 177 (4th Cir. 1998) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)); Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)). Virginia choice of law rules "dictate that an insurance policy . . . is to be applied and interpreted in accordance with the law of the state in which the contract was made." State Auto Prop. & Cas. Ins. Co. v. Gorsuch, 323 F.Supp.2d 746, 751 (W.D. Va. 2004) (citing Lexie v. State Farm Mut. Auto. Ins. Co., 251 Va. 390, 394, 469 S.E.2d 61, 63 (1966)).

7

In Virginia, insurance "provisions requiring action on the part of the insured are reasonable contractual terms that will be enforced." State Farm Mut. Auto. Ins. Co. v. Porter, 221 Va. 592, 597, 272 S.E.2d 196, 199-200 (1980). Performance of such provisions on the part of the insured is a condition precedent to establishing the liability of the insurer. Miller v. Augusta Mut. Ins. Co., 335 F.Supp.2d 727, 731 (W.D. Va. 2004) (citing State Farm Mut. Auto Ins. Co. v. Arghyris, 189 Va. 913, 924, 55 S.E.2d 16, 21 (1949)). The burden of proving the noncompliance of the provisions by the insured usually falls on the insurer. Continental Cas. Co. v. Burton, 795 F.2d 1187, 1193-94 (4th Cir. 1986) (citing Shipp v. Conn. Indem. Co., 194 Va. 249, 258, 72 S.E.2d 343, 348 (1952)). The insurer need not show prejudice resulting from the lack of cooperation. See Shipp, 194 Va. at 256, 72 S.E.2d at 347.

State Farm argues that Hurst, by his lack of cooperation in conducting the EUO as mandated by the insurance policy, breached the insurance contract.[5] In Burton, the Fourth Circuit, applying Virginia law, held that "[i]n order to establish that the insured has breached a cooperation clause by being unavailable, the insurer must prove that the insured willfully breached the clause in a material or essential particular and that the insurer made a reasonable effort to secure the insured's cooperation." Id. at 1193-94 (citing Cooper v. Employers Mut. Liab. Ins. Co.,

_____

[5] Hurst argues that the duty to submit to an EUO is not encompassed by the duty to cooperate. For this proposition Hurst cites the Windt insurance treatise. See 1 Windt, Insurance Claims and Disputes § 3.4 (5th ed. 2007) (citing Charter Oak Fire Ins. Co. v. Coleman, 273 F.Supp.2d 903, 908 (W.D. Ky. 2003)). The court in Coleman applied Kentucky law to an insurance policy that only included a general cooperation clause and did not include an express clause requiring the insured to submit to an EUO. Thus, the Coleman case is inapposite. Moreover, Hurst's insurance policy is governed by Virginia law which enforces reasonable contract provisions requiring action on the part of the insured and further, his policy included both a general cooperation clause and an express provision requiring the insured to submit to an EUO.

8

199 Va. 908, 913-14, 103 S.E.2d 210, 214 (1958)). "The existence of the insured's noncooperation with the insurer is ordinarily a question of fact on which the insurer has the burden of proof." Id. (citing Shipp, 149 Va. at 257-58, 72 S.E.2d at 348). Only when reasonable minds "should not differ as to the proper inferences drawn from the facts," can this question be decided as a matter of law. Cooper, 199 Va. at 914, 103 S.E.2d at 214-15.

State Farm asserts that their reasonableness is shown in the three letters sent by their attorney, McGavin, to which Hurst did not reply. In his letter of July 10, McGavin writes to Hurst, "[p]lease get back to me with the date and time that is convenient to your schedule so that we can conduct the examination under oath." McGavin Letter of July 10, 2001 at 2 (Ex. 5, Dkt. #70). His letter of July 30 states, "we would appreciate it if you would provide us with an available date Monday thru Friday when you can appear for your examination under oath." McGavin Letter of July 30, 2001 at 2 (Ex. 6, Dkt. #70). McGavin's third letter of August 20 states that because McGavin had not heard back from Hurst, McGavin would therefore "assume that you do not intend to pursue this further unless I hear from the contrary." McGavin Letter of August 20, 2001 at 1 (Ex. 7, Dkt. #70). State Farm asserts that Hurst's lack of any response to these three letters establishes his lack of cooperation as a matter of law.[6]

---

[6] Hurst, citing the Appleman insurance treatise, argues that these letters shift the burden of scheduling the EUO to State Farm and that McGavin's letters required no response from him as they did not contain a specific date, time and place for the EUO. Appleman on Insurance Law and Practice, § 3551 (1st ed. 2008) ("The time and place of the taking, and the person to take the examination, must all be set forth by the insurer in its demand"). Hurst's argument ignores the fact that State Farm did all of these things in McGavin's June 28 letter. It was only after Hurst rejected the time and place that State Farm asked Hurst to set an agreeable time and date within the certain parameters set by State Farm. After Hurst failed to respond to any of McGavin's July or August letters, State Farm reasonably concluded that Hurst would not cooperate in their investigation of his claim and in scheduling the EUO.

9

Hurst claims that State Farm's actions cannot be considered reasonable because he made a "standing offer" in his July 5, 2001 letter to conduct the EUO in Arlington on a Saturday. When examined as a whole, however, his July 5 letter is better characterized as a free-wheeling attack on State Farm rather than a cooperative, cordial standing offer. Hurst's letter is titled "UNFAIR CLAIM SETTLEMENT PRACTICES" and labels the State Farm employees who he had contact with as "arbitrary and unreasonable." Hurst Letter of July 5, 2001 at 1 (Ex. 4, Dkt. #70). In various places throughout the six-page letter, Hurst describes "violations of State Farm of its duties" and State Farm's "bad faith practices," and requests that McGavin "coordinate [his] activities [with State Farm] (something sorely lacking to date)." Id. at 2, 6. Construing the July 5, 2001 letter in the light most favorable to plaintiff, this letter hardly suggests cooperation. Rather it stakes out a confrontational and hostile position.

Regardless, Hurst's silence over the next several months in the face of repeated letters from State Farm conclusively establishes his lack of cooperation. At oral argument, Hurst acknowledged that he did not contact State Farm or McGavin from the time of his July 5, 2001 letter through the time of State Farm's denial of claim letter on November 12, 2001. Hurst, at various points during oral argument, claimed he was unable to attend the EUO in Fairfax because of his inability to bring the large amounts of documents to Fairfax that he believed he was required to bring to the EUO; because he was waiting for McGavin to provide him with a certified copy of his insurance policy and case law justifying McGavin's request for Hurst's financial documents;[7] because his van had been stolen and his Buick was unreliable; because he was

_____

[7] Hurst cites the Couch insurance treatise for the proposition that supplying immaterial documents was not encompassed in his duty to cooperate. 13 Couch on Insurance § 196:35 (3d ed. 2008) ("the insured is not required to produce immaterial documents"). The requested

10

waiting for a State Farm agent to get back to him concerning the police report for the stolen

vehicle; and because he was waiting for calls about job prospects from overseas. While one of

these reasons may well have caused McGavin to consider moving the location or the date of the

EUO, Hurst never communicated any of these reasons to McGavin or State Farm. Indeed, none of

these reasons excuse Hurst's four month silence. Rather than provide State Farm with any

reasonable explanation for his insistence on conducting the EUO in Arlington on a Saturday,

Hurst was silent, suggesting intransigence rather than cooperation. At the very least, Hurst should

have contacted McGavin or State Farm to express his inability to attend the EUO for any of the

aforementioned reasons. But Hurst did nothing. Some response to one of the three letters is

necessary for Hurst's conduct to even be remotely considered cooperative. Hurst's silence in the

face of repeated requests for a response cannot in any sense be deemed reasonable cooperation.

Hurst maintains that he was not silent because his July 5 letter was a "standing offer" and

State Farm acknowledged in their Claim Activity Log that Hurst was willing to conduct an EUO.[8]

---

documents were not immaterial as they sought information related to his location on the date of
the claim, past insurance claims and standard information regarding his financial status such as
the prior year's tax returns and bank statements from the few months preceding the claim. More,
to the point, however, State Farm's November 12, 2001 denial letter bases the lack of
cooperation not on Hurst's refusal to produce the documents, but on his lack of response for over
four months in scheduling the EUO. State Farm Letter of November 12, 2001 at 1 (Ex. 9, Dkt.
#70). Additionally, Hurst asserts that McGavin created a condition precedent to the EUO by
agreeing to provide Hurst with case law supporting his document requests. Although McGavin
did not provide Hurst with specific statutory or case authority, he responded to Hurst's request in
writing. The fact that McGavin provided a general, rather than case specific response, does not
excuse Hurst's four month silence.

[8] Hurst, again citing Couch, argues that this willingness to conduct the EUO, just not at
the time and place designated by State Farm, shows that he substantially performed his obligation
to cooperate. 13 Couch on Insurance § 196:16 (3d ed. 2007) (citing Abudayeh v. Fair Plan Ins.
Co., 481 N.Y.S.2d 711, 105 A.D.2d 764 (N.Y. App. Div. 1984)) (where insured was "at all times
willing" to submit to EUO, but not at the time and place specified by insurer, insured was held to

11

State Farm Claim Activity Log (Ex. A, Dkt. #72). A closer look at the Claim Activity Log, however, shows that State Farm, evidenced in four different entries, was simply awaiting a response from Hurst. Id. Multiple entries reflect State Farm's patience with Hurst's lack of a response. The Claim Activity Log does not support Hurst's position, but rather shows that State Farm's reasonableness in awaiting a reply for a period of over four months before issuing the denial letter.

Hurst argues that State Farm, in requiring the EUO to take place in Fairfax during normal business hours, added words to the insurance contract. While it is certainly true that the parties to a contract are bound by its unambiguous terms which may not be rewritten by courts, America Online, Inc. v. St. Paul Mercury Insurance Co., 207 F. Supp. 2d 459, 462 (E.D. Va. 2002), requiring Hurst to appear for the EUO in Fairfax, rather than Arlington, does not alter the terms of the insurance policy. The language of the insurance policy in this case is plain, unambiguous, and does not reasonably have more than one meaning. It requires the insured to "cooperate with the company" and "submit to an examination under oath." Hurst/State Farm Insurance Policy, Condition 5 at 11 (Dkt. #70). Hurst is correct to argue that neither party can bind the other to obligations to which the other did not consent, but he explicitly consented to the obligation to

---

have substantially complied with the obligation to cooperate). As State Farm received one combative letter and no response to three others, Hurst certainly cannot be considered to be "at all times willing" to conduct the EUO. Moreover, the facts of this case do not resemble those in Abudayeh. In Abudayeh, the insured had "various correspondence" with the insurer and the scheduled EUOs were canceled for reasons that were "fully explained and not indicative of dilatory tactics." Abudayeh, 481 N.Y.S.2d at 711, 105 A.D.2d at 766. Further, the court in Abudayeh found that the actual difficulty in scheduling the EUO was due to the insurer requiring the insured to sign a nonwaiver agreement which was not required by the terms of the policy. Id. Here, in contrast, Hurst simply chose not to respond to any of State Farm's three letters in July and August, 2001, demonstrating his abject failure to cooperate.

cooperate and to submit to an EUO when he bought the insurance policy. Submit is defined as "to

yield to governance or authority." http://www.merriam-webster.com/dictionary/submit (last

visited July 7, 2008). The plain meaning of the word "submit" suggests that State Farm has the

ability to designate a reasonable time and place for the EUO and certainly does not suggest that

Hurst can stonewall State Farm for four months. While it is true that the time and place for the

EUO are not specifically mandated by the insurance policy, this does not render the policy

ambiguous. State Farm must only show its reasonableness in attempting to set up a time and

place to secure Hurst's cooperation in submitting to an EUO. This reasonableness is shown in the

three different letters sent by State Farm to Hurst in July and August, 2001 requesting him to reply

with a time to conduct the EUO within the very reasonable parameters set by State Farm. Hurst's

failure to cooperate is manifest in his lack of a reply to any of these letters.

Hurst argues that the EUO must be conducted in Arlington as the vehicle was garaged

there, and that State Farm's requirement that he travel to adjoining Fairfax County was

unreasonable as a matter of law. Hurst again cites Couch to assert that "the place where the

property loss occurs is the proper place for the examination." 13 Couch on Insurance § 196:49

(3d ed. 2007) (citing Pierce v. Globe & Rutgers Fire Ins. Co., 107 Wash. 501, 182 P. 586 (1919)).

The ancient Pierce case from Washington state provides no support for Hurst's argument. In

Ayuob v. American Guarantee and Liability Insurance Co., 605 F. Supp. 713, 716 (S.D. N.Y.

1985), the court distinguished Pierce as being "extremely old and clearly not controlling."[9]

_____

[9]Further, for the proposition that the proper place for the EUO is the place of property
loss, Pierce relies on Ruling Case Law, which, in turn, references Lawyers Reports Annotated,
citing Murphy v. Northern British & Mercantile Co., 61 Mo.App. 323 (Mo. Ct. App. 1895). The
court in Murphy, actually holds that the "place [for the EUO] must be a reasonable place." Id. at
*6. Fairfax, only 13.6 miles away from Arlington, was certainly a reasonable place for the EUO.

13

Further, in contrast to Hurst's intransigence, the insured in <u>Pierce</u> actually traveled 25 miles to

Seattle from Pacific City (where the insured buildings burned) for the EUO, but was not able to

attend at the scheduled time as he was arrested and held in jail for several days for investigation of

arson. The court noted that a jury might well have believed that the insurance company knew

Pierce was being held in jail yet made no effort to contact him. Thus, unlike Hurst, Pierce made

an effort to appear at the EUO, but could not do so as he was jailed. The court in <u>Pierce</u> was also

persuaded by the fact that the insurance company made no further efforts to contact him, in

contrast to McGavin's repeated letters to Hurst.

The absurdity of the apparent stand-off between Hurst and State Farm on the place of the

EUO is manifest from the fact that the distance between Hurst's Arlington address and McGavin's

law office in Fairfax was only 13.6 miles.[10] Google Maps, www.maps.google.com (Get

Directions, Start Address - 1201 South Courthouse Rd., Arlington, VA 22204, End Address -

3920 University Dr., Fairfax, VA 22030) (last visited July 7, 2008). It was hardly unreasonable in

this day and age for either party to travel 13.6 miles to conduct an EUO.

But which party to the insurance contract has to travel 13.6 miles for the EUO is not the

governing issue in this case. Rather, the issue is whether State Farm was justified in denying

Hurst's claim for his lack of cooperation as reflected in his hostile letter of July 5, 2001 and his

abject failure to respond to McGavin's July 10, July 30 and August 20, 2001 letters. Hurst does

not assert that he did not receive the letters, and no reasonable juror could construe his failure to

reply to these letters as anything but a failure to cooperate. Again, Hurst may have had plenty of

good reasons why Arlington on a Saturday made more sense, but he never provided any of them

---

[10] Fairfax is hardly a "distant city" or "far from Hurst's residence" as Hurst argues.

14

to State Farm. Instead, Hurst simply went underground and failed to respond to State Farm's repeated efforts to schedule the EUO as reflected in McGavin's multiple letters.

Finally, Hurst relies on Couch to argue that his failure to respond was mere inaction which does not justify denial of his claim based on lack of cooperation. 14 Couch on Insurance, § 199.31 (3d ed. 2008) (citing Allstate Ins. Co. v. Loester, 675 N.Y.S.2d 832 (N.Y. App. Div. 1998) and Desadier v. Safeway Ins. Co., 712 So. 2d 925 (La. Ct. App. 1998)). Again, however, careful review of the cases cited in Couch does not support Hurst's position. In Loester, for example, the court denied the insurer's motion for summary judgment on the issue of lack of cooperation because the motion was "devoid of any facts" and review of the one letter supporting the motion demonstrated in that case that there was "no real attempt to elicit [the insured's] cooperation." Id. In stark contrast, the undisputed facts of this case plainly show that State Farm made reasonable and real attempts to elicit Hurst's cooperation, which he ignored. Nor does Desadier support Hurst's position. In Desadier, the insurer sent letters to the insured who was functionally illiterate who forwarded the correspondence on to an attorney, and, in turn, the attorney spoke with the insurer. Desadier, 712 So.2d at 927-28. The court found that insured had not "intentionally done anything to be uncooperative." Id. at 927. Additionally, the court applied Louisiana law which requires a showing of prejudice to the insurer, a showing not required under Virginia law. Id. at 928. Obviously, had Hurst asked a representative to respond to State Farm, his personal silence could not be deemed uncooperative. But Hurst did nothing.

The Supreme Court of Virginia's decision in Cooper also supports dismissal of this action. In Cooper, the insurance company attempted to secure the cooperation of an additional insured, Traynham, in assisting in the conduct of a suit against the insurer. Cooper, 199 Va. 908, 103

15

S.E.2d 210. After initially notifying the insurer of the automobile accident, Traynham

disappeared, moving twice without notifying the insurer and failing to appear at trial. The insurer

was unaware of Traynham's location and therefore sent two letters, one to three different

addresses, attempting to secure his cooperation with the pending suit. Id. at 911-12, 103 S.E.2d at

213. The Supreme Court of Virginia found that even if Traynham did not actually receive notice

of the insurer's attempts to gain his cooperation, the insurer acted reasonably. Id. at 917, 103

S.E.2d at 216. In this case, Hurst did, in fact, receive notice through three different letters that

State Farm was attempting to secure his cooperation. Hurst chose not to respond to any of these

letters, leading State Farm to conclude that he would not cooperate. State Farm tried repeatedly to

obtain Hurst's cooperation, but he chose not to do so. As the court in Cooper aptly put, "[t]he law

does not require a [party] to do that which the other party has made impossible." Id.

## IV.

State Farm, as evidenced in the three letters sent to Hurst in July and August, 2001, was

more than reasonable in trying to secure Hurst's cooperation. Hurst, as evidenced in his lack of

response to these three letters over a four month time frame, willfully breached material clauses of

the insurance policy – specifically, the provisions requiring the insured to cooperate and to submit

to an EUO. Although questions of the insurer's reasonableness in securing the insured's

cooperation are usually questions of fact, reasonable minds "should not differ" in finding that

State Farm's actions were reasonable. See Cooper, 199 Va at 914, 103 S.E.2d at 214. None of

the red herring arguments raised by Hurst have any merit and suggest a contrary result. Thus, the

undersigned concludes that, as a matter of law, State Farm did not breach the insurance contract

by denying Hurst's claim for failure to cooperate in 2001. Because no reasonable juror could

16

conclude that Hurst's failure to respond met his contractual obligation to cooperate, it is

**RECOMMENDED** that State Farm's motion for summary judgment be **GRANTED** and Hurst's

motion for partial summary judgment be **DENIED** as to both Counts I and V.[11]

The Clerk is directed to transmit the record in this case to Honorable Glen E. Conrad,

United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are

entitled to note any objections to this Report and Recommendation within ten (10) days hereof.

Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not

specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual

recitations or findings as well as to the conclusion reached by the undersigned may be construed

by any reviewing court as a waiver of such objection.

The clerk is also directed to send a copy of this Report and Recommendation to counsel

via CM/ECF and to plaintiff Hurst via U.S. Mail.

Enter this 7th day of July, 2008.

Michael F. Urbanski, United States Magistrate Judge

---

[11] In Counts I and V, Hurst improperly splits his cause of action for breach of the insurance contract into two claims, one based on the November 12, 2001 letter and one based on the November 2, 2005 letter. Although State Farm sent Hurst letters on each of those dates denying his claim, these do not constitute two separate breaches of contract. The 2005 letter referred to the 2001 letter and indicated that Hurst's claim was denied in 2001. While the 2005 letter corrected an earlier error regarding the statute of limitations for suits against State Farm, it does not change the fact that Hurst's claim was denied in 2001. State Farm's November 2, 2005 letter was written in response to Hurst's letter of October 25, 2005. Hurst's only cause of action is for breach of contract due to State Farm's denial of his claim, and that denial took place in 2001, regardless of how many times State Farm later responded to Hurst's letters that his claim had been denied. As a result, it is **RECOMMENDED** that summary judgment be granted to State Farm as to both Counts I and V of the complaint.

17