IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 2 6 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| JERRY A. HURST, | ) |
| Plaintiff, | ) Civil Action No. 7:05CV00776 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) By: Hon. Glen E. Conrad<br>) United States District Judge |
| Defendant. | ) |

The plaintiff, Jerry A. Hurst ("Hurst"), filed this diversity action claiming that the defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), breached the terms of Hurst's State Farm automobile insurance policy when it denied his claim for the theft of his van in 2001. State Farm claims that it properly denied Hurst's claim based upon his lack of cooperation during State Farm's investigation into the alleged theft of Hurst's van. This matter is now before the court on the report and recommendation of United States Magistrate Judge Michael F. Urbanski, which recommends granting the defendant's motion for summary judgment and denying the plaintiff's motion for partial summary judgment. For the reasons set forth below, the court will overrule the plaintiff's objections and adopt the recommendation of the magistrate judge.

## BACKGROUND

Hurst, proceeding pro se, brought this action against State Farm, initially alleging that the insurer breached contractual provisions, committed fraud, participated in a conspiracy to commit fraud, and intentionally inflicted emotional distress. The court possesses jurisdiction over this

matter based upon diversity of citizenship. See 28 U.S.C. § 1332(a). The case was originally transferred to this court from the Eastern District of Virginia, in Alexandria, on December 21, 2005.[1] On March 23, 2007, the court dismissed Hurst's claims for fraud, conspiracy and intentional infliction of emotional distress, but permitted the plaintiff's breach of contract claims to proceed. In Count I, the plaintiff alleges that State Farm breached its insurance contract when it denied his claim for the theft of his van by letter dated November 12, 2001. In Count V, the plaintiff asserts that State Farm again breached its insurance contract when it issued a "new" denial letter dated November 2, 2005 after Hurst again made contact with State Farm in an effort to resolve his claim.

Many of the material facts in this case are not in dispute. Hurst filed a claim under his automobile insurance policy with State Farm alleging that his van had been stolen from a Food Lion parking lot in Maryland on April 3, 2001. The "Conditions" section of the policy includes the following relevant language regarding Hurst's responsibilities in the event of a claim:

> 5. **Assistance and Cooperation of the Insured (Parts I and III).** The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or loss with respect to which insurance is afforded under this policy. . . . The failure or refusal of the insured to cooperate with or assist the company which prejudices the company's defense of an action for damages arising out of the operation or use of an automobile shall constitute non-compliance with the requirements of the policy that the insured shall cooperate with and assist the company.
>
> . . .

---

[1] The court still has difficulty fathoming why the case was transferred to this district in the first instance. The plaintiff resides in the Eastern District of Virginia, and many of the State Farm representatives with whom the plaintiff dealt also reside in that district. Regardless, now that the case is before the court for whatever reason, the court will proceed to resolve the relevant issues as set forth infra.

8. **Insured's Duties in Event of Loss (Part III).** In the event of loss the insured shall:

   . . .

   (b) file with the company, within 91 days after loss, his sworn proof of loss in such form and including such information as the company may reasonably require and shall, upon the company's request, exhibit the damaged property and submit to examination under oath.

Hurst dealt with a series of State Farm claims representatives in an effort to resolve his claim. After certain issues arose during its investigation of the claim, State Farm decided to retain attorney John D. McGavin to conduct an examination under oath ("EUO") of Hurst.

McGavin sent Hurst a letter dated June 28, 2001 in which he stated that the EUO was scheduled for July 10, 2001, a Tuesday, at McGavin's office in Fairfax, Virginia. The letter also informed Hurst that he should notify McGavin immediately if the stated date or time were inconvenient. McGavin also requested Hurst to bring the following documents to the EUO: state and federal income tax returns for the year 2000, bank account statements for January through May of 2001, credit card statements for January through May of 2001, copies of any insurance claims or bankruptcy filings in the preceding three years, and documents reflecting Hurst's activities on April 3, 2001, the alleged date of loss.

Hurst responded to McGavin in a letter dated July 5, 2001 which was entitled "UNFAIR CLAIM SETTLEMENT PRACTICES." In this letter, Hurst expressed his general frustration with regard to his dealings with State Farm. Hurst also stated that State Farm representative Marty Harbin had said he would call Hurst back regarding the vehicle theft report for Hurst's van

3

but that Harbin had not done so. Hurst indicated that he intended to file a written complaint with the Virginia Bureau of Insurance regarding State Farm's "bad faith practices" and "inappropriate behavior." Hurst then requested McGavin to send him certain items by July 20, 2001, including a copy of the insurance policy, legal authority to justify McGavin's request for information from Hurst, and documents reflecting State Farm's bad faith practices. Finally, Hurst stated that he would be willing to participate in an EUO, but only in Arlington County where he resided and only on a Saturday to avoid working hours.

McGavin responded to Hurst's letter on July 10, 2001, acknowledging receipt of the letter. With regard to the EUO, McGavin stated as follows:

> In regard to the location for the examination under oath, we believe that Fairfax is certainly a reasonable location for the taking of the examination under oath and we will need you to come here to our offices.
>
> In regard to a time or a date, we are unable to accommodate your request to conduct the examination under oath on a Saturday. The examination will have to be during regular business hours from 9:00 a.m. to 5:00 p.m., Monday through Friday. Please get back to me with the date and time that is convenient to your schedule so that we can conduct the examination under oath.

There is no dispute that Hurst failed to respond to this communication. On July 30, 2001, McGavin sent Hurst a copy of the insurance policy and stated, without citing specific examples, that "extensive case law" supported State Farm's request for Hurst to produce the documents previously requested. McGavin also asked Hurst again to provide an available date on a Monday through Friday for the EUO. Once again, however, Hurst provided no response to this letter.

On August 20, 2001, McGavin sent Hurst a final letter in which he stated the following:

> At the [sic] point we have made several requests for available dates to conduct and complete the examination under oath which has been requested under

4

> the terms and conditions of your policy. As of yet, I have not received any available dates from you Monday through Friday during regular business hours.
>
> At this point I can only assume that your intent is not to pursue this matter further. In fact, I have not heard from you since my July 30, 2001, correspondence. Consequently at this point, I am assuming that you do not intend to pursue this further and therefore I will assume that you do not intend to pursue this further unless I hear from the contrary.

There is also no dispute that Hurst made no response to this final letter. Therefore, almost three months later, Marty Harbin, on behalf of State Farm, sent a letter to Hurst dated November 12, 2001 in which the insurer denied Hurst's claim based upon his failure to assist and cooperate in the insurer's investigation of the loss. Harbin also stated that, because Hurst had failed to respond to McGavin's letters and schedule an EUO, State Farm would assume that Hurst no longer intended to pursue the matter.

Hurst alleges that he then contacted his own State Farm agent, by the name of Jones, in November of 2001 regarding the denial. Hurst claims that Jones informed him that the situation involving his claim was a "nightmare" and that Jones would follow up on the situation and get back to Hurst. However, Jones apparently made no further contact with Hurst regarding the denial of his claim, nor did Hurst follow up with Jones.

Hurst next communicated with State Farm on October 25, 2005 in a letter directed to Marty Harbin.[2] In that letter, Hurst stated that the November 12, 2001 denial letter provided no reasons to substantiate State Farm's claim of noncooperation on his part. Hurst also noted that the two year limitations period referenced in the denial letter appeared to be incorrect. Therefore,

---

[2] The court notes that the Order transferring this case to this court from the Eastern District of Virginia stated that Hurst had previously filed a RICO action against State Farm on the basis of many of the same facts that are alleged in his complaint in the instant matter. That prior case was dismissed for lack of federal or diversity jurisdiction in November of 2004. See Hurst v. State Farm Mut. Auto. Ins. Co., No. 1:04CV1350 (E.D. Va. Nov. 12, 2004).

Hurst requested State Farm to respond with "honest, specific, and coherent reasons" for the alleged misrepresentations.

State Farm did respond in a letter from Wensley J. Herbert dated November 2, 2005 which acknowledged receipt of Hurst's letter of October 25, 2005 and stated that:

> By certified letter dated November 12, 2001, your claim was denied as a result of your failure to submit to an examination under oath as requested by our counsel, John McGavin.

The letter then went on to cite the conditions from the insurance policy which require an insured to assist and cooperate with the insurer and to submit to an EUO. Herbert also specified that "[b]y restating the above grounds for denial, State Farm [] does not intend to waive, but rather specifically reserves all its rights, including other defenses which may be applicable to your claim."[3]

In a response dated December 12, 2005, Hurst proceeded to describe what he believed were unfair claim settlement practices by State Farm in regard to the denial of his claim. Hurst also referred to a telephone conversation with Marty Harbin which had allegedly taken place on November 1, 2005 and during which Hurst had agreed to submit to an EUO. Hurst stated that he believed this was simply a delaying tactic on the part of State Farm and that he intended to take legal action against State Farm.[4] McGavin then sent Hurst a letter dated December 27, 2005 in which McGavin requested that Hurst submit to an EUO on January 11, 2008. However, Hurst declined to participate in this examination because of the pending lawsuit.

---

[3] Herbert also clarified that the relevant limitations period was five years rather than the two years previously stated in the November 12, 2001 denial letter. This correction has no bearing on the merits of the plaintiff's claims, however.

[4] This action was actually filed in the Eastern District of Virginia on November 7, 2005, less than a week after the alleged conversation with Harbin.

6

The court referred this matter to the magistrate judge for a hearing on the parties' respective motions for summary judgment. After this hearing took place, the magistrate judge issued a report and recommendation finding that no reasonable juror could conclude that Hurst met his contractual obligation to cooperate with State Farm in its investigation of his claim. Essentially, the magistrate judge found that, as a matter of law, Hurst's lack of response to the letters from John McGavin on behalf of State Farm demonstrated a failure to meet his contractual obligation to cooperate with the insurer. Therefore, the magistrate judge recommended granting State Farm's motion for summary judgment and denying Hurst's motion for partial summary judgment.

In his report and recommendation, the magistrate judge informed the plaintiff that he had ten days in which to file any objections to that report. After the deadline passed with no objections filed by either party, the court adopted the report and recommendation of the magistrate judge as the final decision of the court in an order dated July 22, 2008. On August 4, 2008, however, the plaintiff filed a motion for relief from the judgment claiming that he had failed to receive a copy of the report and recommendation of the magistrate judge. Therefore, by order dated August 5, 2008, the court vacated its prior order and reinstated the case on the active docket of the court, giving the plaintiff an additional ten days in which to file any objections.

The plaintiff has now timely filed several objections to the report and recommendation of the magistrate judge. First, Hurst contends that the magistrate judge improperly found that the claims set forth separately in Count I and Count V of his complaint constituted claim splitting because he alleges that they are based upon two separate denials on the part of State Farm. As a result, Hurst also argues that the magistrate judge failed to properly adjudicate Count V. Next,
7

Hurst asserts that the magistrate judge ignored the fact that State Farm waived its prior denial as well as its defense of noncooperation when it asked Hurst to participate in an EUO in 2005, to which the plaintiff allegedly agreed. Hurst also contends that the magistrate judge improperly determined that an EUO need not be conducted at the place of loss which he claims is in Arlington, Virginia in this case. Next, Hurst argues that his standing offer to participate in an EUO, but only on a Saturday in Arlington, Virginia demonstrated sufficient cooperation and substantial performance, and that the magistrate judge erroneously found that he had not cooperated with State Farm with regard to his claim. Hurst also maintains that he was waiting for a response from particular State Farm agents prior to scheduling an EUO. Hurst next contends that State Farm had requested him to produce records that were not material to a resolution of his claim and that his failure to produce such records does not demonstrate a lack of cooperation with the insurer. Finally, Hurst states that the magistrate judge failed to address several of the arguments raised in his motion for partial summary judgment and requests the court to refer this matter to the magistrate judge for an evidentiary hearing, particularly as to Count V of his complaint.

As will be more fully set forth below, the court will overrule all of the plaintiff's objections to the report and recommendation of the magistrate judge. The court will, therefore, grant the defendant's motion for summary judgment and deny the plaintiff's motion for partial summary judgment.

## STANDARD OF REVIEW

The magistrate judge makes only a recommendation to this court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and this

court retains the responsibility to make a final determination. Id. at 270-71. Nevertheless, a district court is only required to review de novo those portions of the report to which specific objections have been made. 28 U.S.C. § 636(b)(1)(C). Consequently, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. The court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

The plaintiff's objections to the report and recommendation go to virtually every finding by the magistrate judge with regard to the parties' motions for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985). When a motion for summary judgment is supported by affidavits or other evidence as provided for in Rule 56, the opposing party may not rest upon the allegations in the pleadings and must, instead, present evidence showing that there is a genuine issue for trial. If the adverse party fails to present such evidence, summary judgment, if appropriate, should be entered. Fed. R. Civ. P. 56(e); Atkinson v. Bass, 579 F.2d 865, 866 (4th Cir.), cert. denied, 439 U.S. 1003 (1978).

## DISCUSSION

State Farm contends that Hurst failed to cooperate with its investigation of his claim and did not perform certain conditions precedent to coverage. Specifically, State Farm claims that Hurst breached his contractual duty to submit to an EUO, failed to produce relevant documents requested by State Farm in connection with its investigation of Hurst's claim, and did not cooperate with State Farm in their attempts to schedule the EUO. Hurst, on the other hand, argues that he did cooperate with State Farm by offering to participate in an EUO on certain days and in a location other than that requested by McGavin, that he did not respond to McGavin's requests because he was waiting for a response from other State Farm representatives, and that his failure to produce the records requested by State Farm does not demonstrate a lack of cooperation because those records were immaterial to his claim.

In Virginia, an insured may be found to have breached a cooperation clause in an insurance contract if the insurer can "prove that the insured willfully breached the clause in a material or essential particular and that the insurer made a reasonable effort to secure the insured's cooperation." Cont'l Cas. Co. v. Burton, 795 F.2d 1187, 1193-94 (4th Cir. 1986). Such willful noncooperation "requires a deliberate or intentional refusal to cooperate." Id. at 1194. See also, Cooper v. Employers Mut. Liab. Ins. Co. of Wisconsin, 199 Va. 908, 913-14, 103 S.E.2d 210, 214 (1958) (holding that willful noncooperation must be "in some substantial and material respect"). The insurer need not demonstrate any prejudice as a result of the insured's lack of cooperation, however. Cooper, 199 Va. at 914, 103 S.E.2d at 214 (citing State Farm Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (1949)). See also, Mayflower Ins. Co. v. Osborne, 326 F.2d 461 (4th Cir. 1964).

10

In this case, the policy required Hurst, as the insured, to cooperate with State Farm with regard to its investigation of his claim and obligated him to submit to an examination under oath at the request of the insured. The court finds that, although Hurst may have cooperated initially with State Farm representatives during the insurer's investigation, his cooperation later ceased when he repeatedly failed to respond to McGavin's letters requesting an alternate time for the EUO. Hurst does not and cannot dispute that, after his initial response on July 5, 2001, he failed to make any response to McGavin's three successive letters. This is true even though McGavin's final letter dated August 20, 2001 stated that he would assume Hurst was no longer interested in pursuing his claim with State Farm if he received no response from Hurst. Hurst's silence in the face of McGavin's repeated, reasonable efforts to obtain his cooperation is just the sort of deliberate and intentional refusal to cooperate that is described in Burton, supra.

The magistrate judge characterizes Hurst's July 5, 2001 letter as a hostile, confrontational attack upon State Farm that demonstrates Hurst's noncooperation from the beginning of his dealings with McGavin on behalf of State Farm. Hurst objects to this characterization and contends that this letter was business-like and does not evidence a lack of cooperation with his insurer. It is true that Hurst freely expressed his frustrations with various State Farm representatives in the letter, deeming them "arbitrary and unreasonable," and indicated that he intended to file a complaint with the Virginia Bureau of Insurance regarding the "stalling and obvious obstruction of proper settlement procedures required by statutory and case law." However, with regard to McGavin's suggested time and place for the EUO, Hurst stated only that the time and place are not convenient and also that he would be "delighted" to comply with the request "at the soonest convenient date on a Saturday in Arlington." Therefore, the court finds

the tone of the letter to be more frustrated than hostile and does not believe that this letter, taken alone, evidences a willful lack of cooperation.

What is more troublesome to the court, as previously stated, is Hurst's abject failure to respond to McGavin's subsequent letters which clearly stated that McGavin was unable to conduct an EUO with Hurst on a Saturday and which ask Hurst to provide a convenient date and time during normal business hours. Hurst attempts to excuse his lack of response to McGavin by first claiming that he was simply awaiting a response from Marty Harbin, the State Farm representative with whom he had dealt prior to receiving the communication from McGavin. Hurst contends in his objections to the report and recommendation of the magistrate judge that he understood he was to take no further action with regard to his claim until he received a response from Harbin with regard to information obtained from the Salisbury, Maryland police department regarding the lack of a vehicle theft report. This contention is belied, however, by the allegations contained in the plaintiff's complaint. In the complaint, Hurst alleges that he spoke by telephone with Harbin on June 21, 2001 and that

> Harbin expressly represented to plaintiff that <u>he would telephone Plaintiff</u>, after he had discussed the matter with the Salisbury police, in order to report his "progress."

Complaint at ¶ 13 (emphasis in original). Even if it is true that Hurst was waiting for a response from Harbin regarding Harbin's progress on his claim, this does not excuse his failure to properly respond to McGavin regarding the EUO once McGavin contacted him on behalf of State Farm. Furthermore, Hurst's July 5, 2001 letter demonstrates that Hurst was aware that it was McGavin with whom he had to deal on an ongoing basis as Hurst requested certain documents from McGavin, indicated that he could participate in an EUO on dates other than that suggested by

12

McGavin, and asked McGavin to coordinate his activities with Harbin.

Hurst also argues that his failure to respond to McGavin's letters was not a willful refusal to cooperate. In support of his argument, Hurst cites 13 Couch on Insurance § 199:31 (3d ed. 2007) for the proposition that "[m]ere nonaction of insureds, by itself, will not justify a disclaimer of coverage on the ground of lack of cooperation." Hurst also contends that his July 5, 2001 letter represented a standing offer to participate in an EUO, not a willful refusal, once the parties came to an agreement with regard to a time and place for such an examination.

The court first notes that the section from Couch on Insurance cited by the plaintiff has not been adopted or cited in any Virginia case. Furthermore, § 199:31 cites only one New York case in support of this proposition. See Pawtucket Mut. Ins. Co. v. Soler, 184 A.D.2d 498 (N.Y.A.D. 2 Dept. 1992). In Soler, the Court had found that the unexplained absence of the insureds "despite diligent efforts reasonably calculated to obtain their cooperation is not sufficient to raise the inference of willful noncooperation" when the insurer had failed to send a communication to the insureds which would have apprised them of their continuing obligation to cooperate. 184 A.D.2d at 498. In this case, McGavin did send several letters to Hurst in an attempt to elicit his cooperation, the final one of which informed Hurst that the insurer would assume Hurst no longer intended to pursue his claim if he failed to respond. Therefore, the court believes § 199:31 has no application to the facts at issue in this case, and that a failure to respond to reasonable efforts by an insurer can constitute a willful lack of cooperation. See also, Angstadt v. Atlantic Mut. Ins. Co., 254 Va. 286 (1997) (holding that an insured willfully failed to cooperate with an insurer where he failed to attend a scheduled deposition and refused to return telephone calls from the insurer's attorney).

13

The court also finds that Hurst's July 5, 2001 letter cannot be construed as a continuing or standing offer to participate in an EUO under the circumstances of this case. It is true that Hurst stated in the letter that he would be "delighted" to take part in an EUO on a Saturday in Arlington, Virginia. Nevertheless, Hurst's cooperation came to an end when he failed to respond to McGavin's repeated follow-up letters. Over the succeeding four months, McGavin sent three separate letters to Hurst requesting him to follow up with new dates and times. Even if Hurst believed he did not have to respond to the first two letters, McGavin's final letter should have elicited a response because that letter stated specifically that State Farm would assume Hurst no longer desired to pursue his claim if he failed to respond. Hurst's July 5, 2001 letter is more akin to a counter-offer than a standing offer, and he was contractually obligated to continue to cooperate with State Farm's representative McGavin in negotiating a mutually agreeable date and time for the EUO.

Furthermore, Hurst is incorrect in his assertion that he had no need to respond to McGavin until he received all the documents he had requested from State Farm. The insured is required by the terms of the policy to cooperate throughout the insured's investigation of the claim. In addition, McGavin did respond to Hurst's requests and provided a copy of the policy to Hurst. Hurst, however, failed to make any corresponding response to McGavin's reasonable efforts. Therefore, particularly in light of the final notice, no reasonable jury could find Hurst's lack of action to be anything other than willful noncooperation.

Hurst next attempts to justify his silence by claiming that he was relying on his local State Farm agent, Jones, to follow up with the insurer after he received the denial letter from Harbin in November 2001. Hurst alleges that he spoke with Jones on November 14, 2001 at which time

14

Jones stated that the EUO should have taken place in Arlington because the place of loss was the county where the insured resided, i.e., Arlington County. Hurst claims that Jones also stated that State Farm's conduct was a "nightmare that snowballed and never should have happened." See Complaint at ¶ 20.[5] Jones then allegedly told Hurst that he would look into the situation and get back to Hurst, although Hurst claims that Jones never did get back to him. There is no dispute that Hurst made no further contact with State Farm until 2005.

Even assuming that Hurst's allegations regarding Jones are true, this conversation took place after Hurst's claim had been denied and, as the magistrate judge noted, has no bearing on the events that took place up to and including the time of the denial. The court also notes that Hurst failed to contact State Farm again for a period of almost four years, a delay beyond all reason. It was simply not reasonable for Hurst to fail to take any action whatsoever over that period of time, particularly given that the insurer had explicitly denied his claim.[6]

As previously set forth, the court has found that Hurst failed to cooperate with State Farm

---

[5] Hurst's allegations regarding Jones are contained in his complaint which the plaintiff ostensibly verified in his affidavit filed with the court on June 8, 2007. The Court of Appeals for the Fourth Circuit has held that "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (emphasis in original). State Farm requests the court to consider only those factual allegations of the plaintiff's complaint as are based upon his personal knowledge for purposes of deciding the parties' motions for summary judgment. The court intends to consider only such allegations, which would include statements allegedly made by another during a telephone conversation to which Hurst was a party.

[6] The court also notes that, although the plaintiff did file this action within the five year limitation period, his lengthy delay may be sufficient to justify a defense of laches, a defense which State Farm pled in its answer to the complaint but did not assert in its motion for summary judgment. Laches is "the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party." Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 755, 601 S.E.2d 693, 699 (2004) (citing Bazzle v. Bazzle, 37 Va. App. 737, 747, 561 S.E.2d 50, 55 (2002)). Hurst's failure to take any other action on his claim over a period of almost four years could foreseeably have deprived State Farm of the ability to properly investigate the claim for the theft of Hurst's van. Nevertheless, the court does not find it necessary to rely upon this defense in forming its opinion based upon Hurst's lack of cooperation during the period prior to the denial of his claim in November of 2001.

15

as required by the terms of his policy in that he failed to respond to McGavin's repeated requests for acceptable dates and times during the business week for the EUO which was required under the policy. Hurst has also objected to the report and recommendation claiming that it was unreasonable for State Farm to insist that the EUO take place at McGavin's office in Fairfax, Virginia rather than in Arlington, Virginia where the plaintiff resided. Hurst has cited 13 Couch on Insurance § 196:49 (3d ed. 2007) in support of this proposition. Section 196:49 states as follows:

> It has been held that the place where the property loss occurs is the proper place for the examination [under oath], and neither the insurer nor the insured has the right to demand that it shall take place elsewhere.

The sole case cited by Couch in support of this assertion is Pierce v. Globe & Rutgers Fire Ins. Co., 107 Wash. 501 (1919). In Pierce, a Washington state case which has been cited by no Virginia Court, the insured was arrested for arson on the day he intended to present himself for an EUO with regard to his claim for the fire loss. 107 Wash. at 504-05. A representative of the insurer made no effort to contact the insured at the jail and made no further demand that he submit to an EUO. Id. at 505. Therefore, the Court found that it was a question for the jury as to whether the insured failed without reasonable cause to submit for an EUO on the scheduled date. Id. at 506. The Court also noted that the law required an EUO to be conducted at the place where the loss occurs, although the insured had traveled 25 miles from his residence to attend the EUO prior to his arrest. Id.

The court first notes that the plaintiff has failed to cite any language in the policy or any relevant case law to support the proposition that the place of loss in this case is in Arlington, Virginia when his van was allegedly stolen from a grocery store parking lot located in Maryland.

16

Case 7:05-cv-00776-GEC Document 94 Filed 09/26/08 Page 16 of 20 Pageid#: 1023

Regardless, the court also finds that <u>Pierce</u> does not dictate the result here. As the magistrate judge noted, at least one other Court has found the <u>Pierce</u> case to be "extremely old and not controlling." <u>Ayuob v. American Guar. & Liability Ins. Co.</u>, 605 F. Supp. 713, 716 (D.C.N.Y. 1985). The court has been unable to locate any Virginia cases which rely upon either <u>Pierce</u> or § 196:49. Furthermore, in <u>Pierce</u>, the Court noted that the insurer had failed to make any further contact with its insured, unlike the situation at issue in this case where McGavin sent repeated inquiries to Hurst. The relevant policy language is silent with regard to the proper place for an EUO; however, the court believes that McGavin's office in Fairfax, just over thirteen miles from Hurst's Arlington address as noted by the magistrate judge, is a reasonable location. Therefore, the court finds that Hurst's objections with regard to the proper location for the EUO are without merit.[7] Once again, however, the court must point out that, even if the plaintiff believed that the location suggested by State Farm was improper, Hurst's continued silence in the face of McGavin's repeated, reasonable efforts to obtain an alternative date and time for the EUO demonstrates a willful refusal to cooperate with the insurer.

In his objections to the report and recommendation, Hurst also claims that it was unreasonable for State Farm to require him to bring the documents requested by the insurer to the EUO because they were "enormous and immaterial records ... going back 15 to 20 years." The court disagrees. State Farm requested documents going back, at most, three years from the date of the loss. Tax returns were requested only for the preceding year, 2000, and bank account information was requested only for the months of January through May of 2001. In addition,

---

[7] The court also agrees that the request for EUO was sufficient in that McGavin's June 28, 2001 letter did indicate the place for the examination, McGavin's office in Fairfax, the date and time of the examination, and specified that members of McGavin's law firm would conduct the examination.

17

State Farm requested documents relating to Hurst's activities on the date of loss, as well as insurance claim and bankruptcy filings for the previous three years. All of this information is potentially relevant to a claim for theft of a vehicle and does not pose an undue burden on an insured. Therefore, the court finds that State Farm's document request in connection with the proposed EUO was reasonable as well.

Hurst's next objections relate to his renewed contacts with State Farm in October of 2005. Specifically, Hurst claims that, after he sent State Farm the letter dated October 25, 2005, he had a telephone conversation with Harbin on November 1, 2005. In that conversation, according to Hurst, State Farm reopened claim negotiations with Hurst when Harbin requested that Hurst submit to an EUO, and Hurst allegedly agreed. Hurst contends that this request waived State Farm's prior denial and any defense of noncooperation under the policy. The court notes that many of the plaintiff's statements in the complaint with regard to his conversation with Harbin are conclusory and do not set forth the specific details of their conversation. Nevertheless, the complaint does indicate that Harbin referred back several times to State Farm's original denial. See Complaint at ¶¶ 67-69. Furthermore, the plaintiff does not claim that Harbin ever stated that he was waiving State Farm's right to deny the claim or any other policy conditions.

The letter sent by Wensley Herbert of State Farm dated November 2, 2005, the day after Hurst's conversation with Harbin, acknowledges receipt of Hurst's October 25, 2005 letter and states that his claim was "denied as a result of your failure to submit to an examination under oath as requested by our counsel, John McGavin." Hensley then goes on to quote the conditions sections of the policy dealing with the cooperation of the insured and the requirement to submit

18

to an EUO. The letter closes as follows:

> By restating the above grounds for denial, State Farm Mutual Automobile Insurance Company does not intend to waive, but rather specifically reserves its rights, including other defenses which may be applicable to your claim.

McGavin later followed up with Hurst in a letter dated December 27, 2005 in which he responded to a letter sent by Hurst to Hensley and stated that

> In 2001, you did not consent to submit to an examination under oath, despite being asked to provide a specific available date, as opposed to speaking generically about agreeing in principle to appear.
>
> Your recent discussion in 2005 with Mr. Harbin did involve an agreement by you to submit to an examination under oath. That agreement comes four years after the last request by State Farm and after your claim has been denied.
>
> . . .
>
> Our actions by agreeing to the examination under oath shall not constitute a waiver of our rights under the policy in question.
>
> Specifically, we hereby notify you that we are reserving our rights under the policy of insurance to deny this claim and that by proceeding with the examination under oath, we do not waive any policy conditions.

Based upon State Farm's written responses to Hurst in 2005, as well as the plaintiff's allegations regarding his conversation with Harbin, the court finds that State Farm did not reopen its prior denial of Hurst's claim and did not waive any of its rights under the policy. Instead, it appears that State Farm, as well as Hurst himself, was attempting to come to some resolution with regard to Hurst's objections to the denial of his claim, particularly in light of the fact that Hurst filed the instant action on November 7, 2005, less than a week after his conversation with Harbin.[8] In

---

[8] While Hurst was certainly legally permitted to file this action within the applicable limitations period, the court also notes that the fact that Hurst did file so soon after his conversation with Harbin somewhat belies his argument that he continued to cooperate with State Farm throughout this round of dealings. The court also notes that State Farm's willingness to conduct an EUO at this late date, almost four years after Hurst's claim was denied, demonstrates significant good faith on the part of the insurer.

19

addition, State Farm's letter and the letter of its attorney all specify that they were restating the reasons for the denial of Hurst's claim, rather than making a new denial of the claim, reserving any rights to deny the claim, and specifically not waiving any policy conditions. Therefore, the court finds that, rather than reopening the original claim, State Farm was attempting to resolve a matter in which litigation was either threatened or actually pending, and Hurst's objections to the contrary shall be overruled.[9]

## CONCLUSION

For the foregoing reasons, the plaintiff's objections to the report and recommendation of the magistrate judge shall be overruled, and the recommendation of the magistrate judge shall be adopted. Therefore, the court will grant the defendant's motion for summary judgment and deny the plaintiff's motion for partial summary judgment.

The Clerk is directed to send certified copies of this Memorandum Opinion to the plaintiff and all counsel of record

ENTER: This 26th day of September, 2008.

_/s/ Jackson Kiser_
United States District Judge

---

[9] Based upon this finding, the court also finds no merit in Hurst's objection that the magistrate judge failed to properly adjudicate Count V of his complaint, and this objection will likewise be overruled.